NO.
12-06-00040-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

§          

 

IN RE: CHRISTOPHER ALLAN, M.D.,   §          ORIGINAL
PROCEEDING

RELATOR

§          

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            In this original mandamus
proceeding, Christopher Allan, M.D. complains of the trial court’s order
denying his petition to take depositions pursuant to Texas Rule of Civil
Procedure 202.[1]   The issue in this
proceeding is whether Texas Civil Practice and Remedies Code subsection
74.351(s) prohibits presuit depositions under Rule 202.  This issue is one of first impression.  We conditionally grant the requested relief.

Background

            Christopher Allan, M.D. filed a
petition for depositions pursuant to Texas Rule of Civil Procedure 202 to
investigate a potential claim or suit arising out of the medical care of his
mother.  In his petition, Allan requested
an order authorizing him to take the oral and videotaped depositions of Jack
Jorden, M.D., Donald Knarr, M.D., the Chest Pain Center coordinator for Trinity
Mother Frances Hospital Systems, and a representative of Tyler Cardiovascular
Consultants, P.A.  Respondent conducted a
hearing on Allan’s petition during which Dr. Jorden, Dr. Knarr, Trinity Mother
Frances, and Tyler Cardiovascular Consultants (collectively “real parties”)
contended that the Texas Medical Liability Act (TMLA or Chapter 74)[2] prohibits presuit depositions in a health care liability
claim.  Approximately three weeks later,
Respondent signed a written order denying Dr. Allan’s petition.  The order stated in part as follows:

 

The Court finds that under the facts alleged
in this case there is a conflict between Chapter 74 of the Texas Civil Practice
and Remedies Code and Rule 202 of the Texas Rules of Civil Procedure.  The Court finds that Section 74.002 of the
Texas Civil Practice and Remedies Code controls and resolves the said conflict
and mandates the Court not approve the requested Rule 202 depositions of
various healthcare providers.  The Court
further finds persuasive the opinions of   In re Miller, 133
S.W.3d 816 (Tex. App.–Beaumont, 2004) and In re Huag, 175 S.W.3d 449,
456 (Tex. App. - Houston [1st Dist.]).  The Houston Court of Appeals stated: “Significantly,
the only types of discovery not excepted from the stay in subsection
74.351(s) are the oral depositions of parties and pre-suit depositions.”  Id. at 456.  The Court further finds no other Court
appears to have addressed this specific issue and it is a case of first
impression.

 

This
original proceeding followed. 

Availability of Mandamus

            Mandamus will issue to correct a
clear abuse of discretion where there is no adequate remedy by appeal.  Walker v. Packer, 827 S.W.2d
833, 839-49 (Tex. 1992).  A clear failure
by the trial court to analyze or apply the law correctly will constitute an
abuse of discretion.  Id.
at 849.  Interpretation of a statute is a
pure question of law over which the trial court has no discretion.  In re Canales, 52 S.W.3d 698,
701 (Tex. 2001).  An appellate remedy is “adequate”
when any benefits to mandamus review are outweighed by the detriments.  In re Prudential Ins. Co. of Am.,
148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).  When the benefits outweigh the detriments,
appellate courts must consider whether the appellate remedy is adequate.  Id.  This determination depends heavily on the
circumstances presented and is better guided by general principles than by
simple rules.  Id. at
137.  The party seeking the writ of
mandamus has the burden of showing that the trial court abused its
discretion.   In re E. Tex.
Med. Ctr. Athens, 154 S.W.3d 933, 935 (Tex. App.–Tyler 2005, orig.
proceeding). 

Rule 202 vs. Subsection 74.351(s)

            Rule 202 permits a person to
petition the court for an order authorizing an oral or written deposition
before suit is filed.  Tex. R. Civ. P. 202.1 & cmt.
1.  The deposition may be taken to
perpetuate testimony for use in an anticipated suit or to investigate a
potential claim or suit.  Id.  A deposition may be ordered only if the trial
court finds that allowing the petitioner to take the requested deposition may
prevent a failure or delay of justice in an anticipated suit or, where the
deposition is to investigate a potential claim, that the likely benefit
outweighs the burden or expense of the procedure.  Tex.
R. Civ. P. 202.4(a).  

            Section 74.351, a part of the TMLA,
provides that in a health care liability claim, a claimant must provide one or
more expert reports and a curriculum vitae of each expert listed in the report
for each physician or health care provider against whom a liability claim is
asserted.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon
Supp. 2005).  Subsection 74.351(s), the
subject of this proceeding, states as follows: 

 

(s) Until a claimant has served the expert
report and curriculum vitae as required by Subsection (a), all discovery in a
health care liability claim is stayed except for the acquisition by the
claimant of information, including medical or hospital records or other
documents or tangible things, related to the patient’s health care through:

 

(1) written discovery as defined in Rule
192.7, Texas Rules of Civil Procedure;

 

(2) depositions on written questions under
Rule 200, Texas Rules of Civil Procedure; and

 

(3) discovery from nonparties under Rule 205,
Texas Rules of Civil Procedure.

 

Id. § 74.351(s).  The real parties contend that the stay of “all
discovery in a health care liability claim” includes Rule 202 depositions,
thereby creating a conflict between Rule 202 and Subsection 74.351(s).  To determine whether such a conflict exists,
we must construe Subsection 74.351(s).

            In
construing a statute, our primary objective is to determine and give effect to
the legislature’s intent in enacting it. 
 McIntyre v. Ramirez,
109 S.W.3d 741, 745 (Tex. 2003).  We
start with the plain and common meaning of the statute’s words.  Id.  Unless a statute is ambiguous, we determine
the legislature’s intent from the language of the statute itself.  Continental Cas. Co. v. Downs,
81 S.W.3d 803, 805 (Tex. 2001).  We must
presume that every word of a statute has been used for a purpose and that every
word excluded from a statute has been excluded for a purpose.  Laidlaw Waste Sys., Inc. v. Wilmer,
904 S.W.2d 656, 659 (Tex. 1995). 
Regardless of whether the statute is ambiguous, we may consider its
legislative history.  Tex. Gov’t Code Ann. § 311.023(3)
(Vernon  2005).

 

Abuse of Discretion

            The discovery stay imposed by
Subsection 74.351(s) applies in a “health care liability claim.” Tex. Civ. Prac. & Rem. Code Ann. §
74.351(s).  The real parties characterize
Dr. Allan as one having a “potential” cause of action and argue that a “health care
liability claim” includes potential, as well as existing, causes of
action.  Therefore, the real parties
conclude, the discovery stay is in effect and that Respondent properly denied
Dr. Allan’s petition for Rule 202 depositions. 
The real parties further assert that the Subsection 74.351(s)
prohibition of presuit depositions conflicts with Rule 202 and that Subsection
74.351(s) controls.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.002(a)
(Vernon 2005) (providing that Chapter 74 controls in the event it conflicts
with a rule of procedure).  Dr. Allan
counters that no conflict exists between Subsection 74.351(s) and Rule 202,
that Chapter 74 does not apply to these proceedings, and that the legislative
history of Chapter 74 does not support the real parties’ argument.  The resolution of the matter turns on whether
the definition of a “health care liability claim” includes potential, as well
as existing, causes of action. 

Statutory
Language

            A “health care liability claim” is
defined in the TMLA as a “cause of action” 

against a health care provider or physician
for treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim or
cause of action sounds in tort or contract.

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (Vernon 2005). 
At common law,[3] a “cause of action” ordinarily consists of two distinct and
separate elements, the primary right and duty of the parties respectively and
the wrongful act or omission violating it. 
Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114,
277 S.W. 621, 623-24 (1925).  A “cause of
action” has also been said to consist of those facts entitling one to institute
and maintain an action at law or in equity. 
A.H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619,
621 (1939); F.D.I.C. v. Bodin Concrete Co., 869 S.W.2d 372, 378
(Tex. App.–Dallas 1993, writ denied). 
Thus, a “cause of action” encompasses every essential fact that a
plaintiff must prove to obtain a judgment. 
F.D.I.C., 869 S.W.2d at 378.       Implicit in the
definition of “cause of action” is that the essential facts are known.  Here, Dr. Allan’s cause of action is
described as “potential” because he does not know the facts relating to his
mother’s care.  When he learns those
facts, he may conclude that he does not have a “cause of action.”  The common law definition of “cause of action”
does not contemplate such a scenario. 
Consequently, a “potential cause of action” is not a “cause of action”
as that term is defined at common law. 
Therefore, the plain language of Subsection 74.351(s) does not support a
conclusion that the legislature intended to characterize a potential cause of
action as a “health care liability claim.” 
Nonetheless, the real parties argue that the legislature intended to
afford health care providers protection from potential  causes of action as evidenced by the number
of safeguards enacted to protect health care providers.  Dr. Allan contends that the legislative
history shows a contrary intent.

Legislative History[4]

            In the
earliest version of HB 4 (now the TMLA), a “health care liability claim” was
defined as 

a cause of action against a health care
provider or physician arising out of or related to treatment, lack of
treatment, or other claimed departure from accepted standards of medical care,
health care, or safety or professional or administrative services practice or
procedure which proximately results in injury to or death of a claimant,
whether the claimant’s claim or cause of action sounds in tort or contract.

 

H.R. Committee on Civil Practices, Committee
Substitute, H.B. 4 § 10.01(a), 78th Legislature, R.S. (March 7,
2003).  This version of HB 4 provided
that “[n]otwithstanding the provisions of Rule 202, Texas Rules of Civil
Procedure, a deposition may not be taken of a physician or health care provider
for the purpose of investigating a health care liability claim before the
filing of a lawsuit.”  Id. §
10.03(f).  The same version of HB 4 also
provided that all discovery would be stayed until the expert reports and
curriculum vitae were served except for “the acquisition of the patient’s
medical records, medical or psychological studies or tissue samples through”
written discovery, depositions on written questions, and discovery from
nonparties.  Id. § 10.15(s).  Finally, this version of HB 4 included a
provision that “[n]otwithstanding Section 22.004, Government Code, the supreme
court may not amend or adopt rules in conflict with this Act.”  Id. § 1.04(b). 

            The
Engrossed Version of HB 4 retained the earlier definition of “health care
liability claim” and the provision prohibiting the Texas Supreme Court from
adopting rules that would conflict with the Act.  Engrossed
Version, Tex. H.B. 4, §§ 10.01(4), 1.04(b), 78th Leg., R.S. (March 31,
2003).  This version also retained the
stay of discovery before service of expert reports and curriculum vitae except
for discovery of medical records, studies, and tissue samples by written
discovery, depositions on written questions, and discovery from
nonparties.  Id. §
10.15(s).  However, unlike the prior
version, the Engrossed Version provided that Rule 202 depositions could be
taken for the purpose of investigating a health care liability claim before the
filing of a lawsuit if, among other things, “it cannot be reasonably determined
from the records provided what sequence of events occurred in the relevant
treatment or events, or cannot be reasonably determined who was present,
involved, participated in or observed the events in question.” Id.
§ 10.03(f).  

            The Senate
State Affairs Committee, chaired by Senator Bill Ratliff, heard testimony on
the effects of prohibiting or limiting the availability of Rule 202
depositions.  At the time of this
testimony, the Engrossed Version of HB 4 had already been filed by the Texas
House.  The testimony before the State
Affairs Committee was that requiring an outcome dispositive report with no
discovery in a health care liability claim would impose an impossible burden on
claimants.  Specifically, without presuit
depositions, a claimant would be unable to serve an outcome dispositive report
that satisfies the requirements of an expert report in a health care liability
claim.  The testimony pointed out the
problems with an expert’s evaluating a doctor’s conduct based solely upon
medical records without being able to ask questions about the records.  The testimony further pointed out that the
purpose of a Rule 202 deposition is to allow investigation of a claim to
determine whether certain defendants should be brought in or the claims should
be brought.  A limit of five depositions
was proposed, either under Rule 202 or at the discovery phase before the expert
report is filed.  It was also suggested
in the testimony that the limitations specifically relating to Rule 202
depositions should be taken out of H.B. 4 because “judges already look very
carefully at whether or not to allow 202 depositions.”  Hearings on Tex. H.B. 4 Before the Sen.
Comm. on State Affairs, 78th Leg., R.S. 2-3, 7-8 (April 16, 2003; May
5, 2003) (transcript available from Legislative Intent Research).

            On May 14,
2003, the Senate State Affairs Committee filed the Senate Committee Report
Version of H.B. 4.  This version removed
all provisions that would have prohibited, restricted, or limited Rule 202
depositions to investigate potential claims involving health care providers and
removed the reference to section 22.004 of the Texas Government Code.  Sen.
Committee on State Affairs,  Committee
Substitute, Tex. H.B. 4, § 10.01, 78th Leg., R.S. (May 14, 2003).  The prior definition of “health care
liability claim” remained unchanged.  Id.


            To
summarize, the Texas Legislature initially considered a complete prohibition of
Rule 202 depositions to investigate potential claims involving health care
providers, then considered restricting Rule 202 depositions in those claims,
but in the final bill did not limit, restrict, or prohibit Rule 202 depositions
to investigate potential claims involving health care providers.  During its consideration of these provisions,
the definition of “health care liability claim” remained the same.  If, as the real parties contend, the
legislative definition of “health care liability claim” encompasses potential
causes of action, the legislature’s actions relating to Rule 202 depositions
were unnecessary because the depositions are stayed under Subsection 74.351(s)
until the expert reports and curriculum vitae are filed.  It is therefore reasonable to assume from
this legislative history that the legislature did not intend for a potential
claim or cause of action to be characterized as a “health care liability claim.”  

Conclusion

            We hold that
the definition of “health care liability claim” does not include a potential
cause of action.  Thus, the stay of
discovery imposed by Subsection 74.351(s) does not preclude Rule 202
depositions. As such, no conflict exists between Subsection 74.351(s) and Rule
202.  Accordingly, Respondent’s order
denying Dr. Allan’s Rule 202 petition for the reasons stated in the order
constitutes an abuse of discretion.

                                    Adequate
Remedy By Appeal








            We also
conclude that appeal is not an adequate remedy. 
Whether Rule 202 depositions are stayed by Subsection 74.351(s) is a
question of law that is likely to recur. 
In re Prudential, 148 S.W.3d at 138.  Moreover, a ruling on a Rule 202 petition is
a final, appealable order only if the petition seeks discovery from a third
party against whom a suit is not contemplated. 
Thomas v. Fitzgerald, 166 S.W.3d 746, 747 (Tex. App.–Waco
2005, no pet.); see Ross Stores, Inc. v. Redken Labs, Inc., 810
S.W.2d 741, 742 (Tex. 1991) (applying predecessor to Rule 202).  The ruling is interlocutory if discovery is
sought from a person against whom there is a suit pending or against whom a
suit is specifically contemplated.  IFS
Security Group, Inc. v. American Equity Ins. Co., 175 S.W.3d 560, 563
(Tex. App.–Dallas 2005, no pet.); Thomas, 166 S.W.3d at 747.  Here, Dr. Allan contemplates filing suit
against those named in his petition. 
Consequently, Respondent’s order is interlocutory and not immediately
appealable. 

            Dr. Allan
represents that he has insufficient information to file suit against any of the
individuals or entities named in his Rule 202 petition without violating Texas
Rule of Civil Procedure 13 and section 9.011 of the Texas Civil Practice
and Remedies Code.[5]  He also states
that he will be unable to obtain an adequate expert report because he cannot
determine the sequence of events that occurred in his mother’s care.  If Dr. Allan does not file suit, any claim he
may have will be lost.  If he files suit
without investigating his claim but is unable to obtain an adequate expert
report, his suit will be dismissed with prejudice.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon Supp. 2005).  In either event, his right to investigate the
facts of his mother’s care prior to filing suit cannot be restored.  Moreover, if Dr. Allan files suit and the
case proceeds to final judgment, appellate review is problematic as well.  See In re Prudential, 148
S.W.3d at 138 (discussing unavailability of appeal from favorable judgment and
difficulty of reversing unfavorable judgment).

            We hold
that, in this case, the benefits of mandamus outweigh the detriments.  Therefore, appeal is an inadequate remedy for
Dr. Allan.

Disposition

            Having held
that Respondent abused his discretion and that appeal is an inadequate remedy,
we conditionally grant the writ of mandamus. 
We are confident, however, that Respondent will vacate his order denying
Dr. Allan’s petition for Rule 202 depositions within ten days of the date of
this opinion and corresponding order and then proceed to the merits of Dr.
Allan’s petition. 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered April 27, 2006.

Panel consisted of Worthen, C.J.
and Griffith, J.

DeVasto, J., not participating.

 

 

 

(PUBLISH)











[1] The
respondent is the Honorable Kerry S. Russell, Judge of the 7th Judicial
District Court of Smith County. 





[2] See
Tex. Civ. Prac. & Rem. Code Ann.
§§ 74.001-.507 (Vernon & Supp. 2005).  





[3] “Any
legal term or word of art used in [the TMLA], not otherwise defined in [the
Act] shall have such meaning as is consistent with the common law.”  Tex.
Civ. Prac. & Rem. Code Ann. § 74.001(b) (Vernon 2005).  The TMLA does not contain a definition of “cause
of action.”





[4] The
history of HB 4 during the 78th legislative session can be found at
www.capitol.state.tx.us.





[5] Rule
13 provides that the signatures of attorneys or parties constitute a
certificate by them that they have read the signed pleading, motion, or other
paper and, that to the best of their knowledge, information, and belief formed
after reasonable inquiry, the instrument is not groundless and brought in bad
faith or for the purpose of harassment.  Tex. R. Civ. P. 13.  Section 9.011 contains similar language and
further provides that the signature also constitutes a certificate that the
pleading is not groundless and interposed for any improper purpose, such as to
cause unnecessary delay or needless increase in the cost of litigation.  See Tex.
Civ. Prac. & Rem. Code Ann. § 9.011 (Vernon 2002).